# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 22, 2003

## STATE OF TENNESSEE v. DORIS M. DENNISON

**Appeal from the Criminal Court for Union County**
**No. 1985     E. Shayne Sexton, Judge**

_____

**No. E2003-01101-CCA-R3-CD**
**September 10, 2003**
_____

The defendant, Doris M. Dennison, pled guilty in the Union County Criminal Court to five counts of aggravated sexual battery, a Class B felony. Pursuant to the plea agreement, the defendant received an eight-year sentence for each conviction with the issue of concurrent or consecutive sentencing to be determined by the trial court. After a sentencing hearing, the trial court ordered that the defendant serve counts one through four consecutively to each other but concurrently with count five for an effective sentence of thirty-two years in the Department of Correction. The defendant appeals, claiming that the trial court improperly ordered consecutive sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA McGEE OGLE, J., joined.

B.J. Reed, Knoxville, Tennessee, for the appellant, Doris M. Dennison.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William Paul Phillips, District Attorney General; and Jared Ralph Effler and Amanda L. Cox, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's allowing Johnny "Frog" Edmondson to abuse her eight-year-old daughter sexually from October to December 2000. At the sentencing hearing, Detective Steve Rouse of the Union County Sheriff's Department testified that he began investigating an allegation that the defendant had allowed Mr. Edmondson to abuse the victim sexually once in December 2000. He said that he questioned the defendant and that she gave a written statement. He said the defendant revealed several other incidents in which she had allowed Mr. Edmondson to abuse the victim. He said that the defendant was cooperative and forthcoming with information about the abuse, that she helped him draw a diagram of Mr. Edmondson's home, and that she

explained where the offenses occurred in the home. He said that the defendant was not promised immunity in return for her information and that she testified against Mr. Edmondson at his trial. He said that during the defendant's interview, he did not have difficulty understanding her speech and did not notice that she was mentally retarded.

The state introduced the defendant's written statement into evidence. In the statement, the defendant said the following: From the summer of 2000 until December 23, 2000, the defendant and the victim went to Johnny Edmondson's house about six times. During their first visit to Mr. Edmondson's home, Mr. Edmondson flirted with the victim, offered her money, and asked her to have sex with him. However, the victim refused. During some of the defendant's and the victim's subsequent visits to the home, the victim massaged Mr. Edmondson's penis until he ejaculated while the defendant watched them. Mr. Edmondson also performed cunnilingus on the victim several times. When the defendant and the victim went to Mr. Edmondson's home on December 23, Mr. Edmondson touched the victim's breasts. After some of the visits, Mr. Edmondson would pay the victim and the defendant one to twenty dollars each.

Social worker Beth Overbay testified that she began providing therapy to the victim in February 2001 and that she had been seeing the victim every two weeks since that time. She said that the victim suffered from anxiety, depression, and post-traumatic stress as a result of the sexual abuse and that the victim was angry at the defendant and Mr. Edmondson for the abuse. She said the victim did not like to talk about the abuse and never wanted to see the defendant or Mr. Edmondson again. She said that as a result of the abuse, the victim also was having problems in school and that her grades had dropped. She said, though, that the victim's grades were improving and that she did not think the victim's therapy would need to continue for more than a year. She said the victim could need therapy again later in life because sexually abused children often have unstable relationships, suffer from depression and anxiety, become substance abusers, and have difficulty trusting others. On cross-examination, Ms. Overbay testified that the victim had been in state custody since December 2000 and had not had contact with the defendant.

Ruby Smith, the defendant's sister, acknowledged that the defendant is mentally retarded. She said that the defendant could read but that the defendant could not write well. She said that the defendant was placed in a foster home when the defendant was eleven years old and that the defendant was sexually abused by "quite a few people" when the defendant was eleven or twelve years old. She said the defendant took special education classes in school, dropped out of school in the ninth grade, got married at age sixteen, and had never worked. She said that when the defendant was sixteen or seventeen years old, the defendant told her that Johnny Edmondson had sexually abused the defendant. On cross-examination, she acknowledged that the defendant knew Mr. Edmondson was a sexual abuser when the defendant took the victim to Mr. Edmondson's house in 2000.

Gladys Cummings, the defendant's great aunt, testified that the defendant was a slow learner, did not act normal as a child, and could not read or write well. Walter Nicely, the defendant's father, testified that the defendant had never been "right" and that she was placed in foster care when she

was eleven years old because he did not have the money to look after her and because he had neglected to send her to school. He said the defendant was in state custody for about three years. Ann Nicely, the defendant's mother, testified that the defendant was placed in foster care as a child because the defendant had been sexually abused. She said that the defendant's sisters told her about the abuse and that she did not report it to the police.

The defendant testified that she was born on May 16, 1969, and that she thought she was thirty-one years old. She said that she lived in a foster home for two and one-half years as a child and that she was in foster care because her parents did not take care of her. She said she took special education classes in school and had dropped out during the eighth grade. She said that she married the victim's father when she was sixteen years old, that they were still married, that the victim was her only child, and that she loved the victim.

The defendant testified that Johnny Edmondson asked her to let him molest the victim and that she told Mr. Edmondson no. She said that she had been molested as a child and that she would not let that happen to the victim. She said she was sorry she had taken the victim to Mr. Edmondson's house because it had resulted in her daughter being taken away from her. She said that Mr. Edmondson had never sexually abused her but that he had asked her to have sexual intercourse with him after she was married. On cross-examination, the defendant testified that on October 17, 1997, she was convicted of aggravated burglary and was sentenced to three years of supervised probation. She acknowledged that she was still on probation when she took the victim to Mr. Edmondson's house and that she also was convicted of criminal littering in 1993. She said that she knew Mr. Edmondson was capable of abusing her daughter when she took her daughter to his house but that if she had known Mr. Edmondson was abusing the victim, she would not have taken the victim to visit him. She said her written statement to Detective Rouse was true.

According to the defendant's presentence report, the then thirty-three-year-old defendant was disabled and received social security benefits because of her mental retardation. In the report, the defendant stated that her mental health was poor, that she was taking medication for seizures, and that she had attempted suicide. She also stated in the report that she began using marijuana daily when she was sixteen years old and that she had been using cocaine for about one year. The report shows that the defendant completed two substance abuse treatment programs in January 2001. In addition to the defendant's prior convictions for aggravated burglary in 1997 and criminal littering in 1993, the report states that the defendant was on probation for her 1997 conviction at the time of the offenses in question.

At the end of the hearing, the trial court held that the defendant's offenses were aggravated given the defendant's failure to protect her daughter and the extent of the residual mental damage to the victim. See Tenn. Code Ann. § 40-35-115(b)(5). It determined that these aggravating circumstances, especially the residual mental damage to the victim, weighed against concurrent sentencing and ordered that the defendant serve her sentences consecutively.

The defendant claims that the trial court erred by ordering consecutive sentencing because the evidence does not support the trial court's determination that the abuse had a great residual effect on the victim. Specifically, she argues that Beth Overbay's testimony about the victim's residual mental damage was speculative. In addition, she claims that her mental condition and her assisting the state with its investigation of the case mitigate against consecutive sentences. The state claims that the trial court properly ordered consecutive sentences. We agree with the state.

When a defendant appeals the length of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169. Under Tenn. Code Ann. § 40-35-115(b)(5), consecutive sentences may be ordered if the trial court finds by a preponderance of the evidence that multiple offenses of sexual abuse of a minor occurred and were aggravated by the relationship between the defendant and the victim, the time span of the undetected sexual activity, the nature and scope of the sexual acts, and the extent of the resulting physical or mental damage to the victim. See State v. Taylor, 739 S.W.2d 227, 230 (Tenn. 1987).

Initially, we note that any evidence presented at the guilty plea hearing should be considered in determining the appropriate sentence. See Tenn. Code Ann. § 40-35-210(b)(1). However, the defendant has failed to include in the record on appeal a transcript of the guilty plea hearing relating to her conviction. It is the duty of the defendant to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. T.R.A.P. 24. This court has repeatedly held that failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a meaningful de novo review of the sentence. Absent the guilty plea hearing, in which facts are presented, we may presume that the trial court was justified in ordering consecutive sentencing. See, e.g., State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). In any event, the record before us supports the trial court's determination.

The defendant was convicted of five offenses involving the sexual abuse of a minor. The record supports the trial court's determination that the victim suffered great residual mental damage as a result of the abuse. The defendant knew that Johnny Edmondson was sexually abusing the victim and even watched him repeatedly abuse the victim. Beth Overbay testified that as a result of the abuse, the victim suffered from anxiety, depression, and post-traumatic stress and that she was having problems in school. In addition, Ms. Overbay testified that the victim was angry with the defendant and never wanted to see the defendant again. At the time of the May 28, 2002 sentencing hearing, Ms. Overbay had been meeting with the victim every two weeks since February 2001, and she said that the victim's therapy could continue for up to a year. In addition, Ms. Overbay could

not rule out the possibility that the victim would need additional therapy later in life as a result of the abuse.  We conclude that the trial court properly imposed consecutive sentences.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

 

_____

JOSEPH M. TIPTON, JUDGE